UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RUDY RIVERA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | Case No. 2:19-cv-00306-RFB-VCF<br><br>**ORDER** |

### I.　INTRODUCTION

Before the Court is Defendant's Motion to Dismiss/Summary Judgment[1] (ECF Nos. 19) and Plaintiff's Motion for Summary Judgment (ECF No. 21).

### II.　PROCEDURAL BACKGROUND

On February 20, 2019, Plaintiff commenced this lawsuit against Defendant. ECF No. 1. Discovery closed on April 20, 2020. ECF No. 18. On May 20, 2020, Defendant filed its Motion to Dismiss. ECF No. 19.  On that same date, Plaintiff filed his Motion for Summary Judgment. ECF No. 21. On July 10, 2020, Defendant filed its response to the Motion for Summary Judgment. ECF No. 28. On that same date, Plaintiff filed his response to the Motion to Dismiss. ECF No. 30. On August 7, 2020, Plaintiff filed his reply to the Motion for Summary Judgment. ECF No. 34. On that same date, Defendant filed its reply to the Motion to Dismiss. ECF No. 35.

---

[1] The Court construes the Defendant's motion as a motion for summary judgment as it comes at the close of discovery and Defendant has asserted facts in its response to Plaintiff's Motion for Summary Judgment. Fed. R. Civ. P. 56.

The Plaintiff asserts five claims all under the Federal Tort Claims Act ("FTCA"): (1) Negligence, (2) Negligent Infliction of Emotional Distress, (3) Intentional Infliction of Emotional Distress, (4) False Imprisonment, and (5) Malicious Prosecution.

### III.   FACTUAL FINDINGS

#### A.  Undisputed Facts

The Court finds the following facts to be undisputed.

On November 25, 2014, a federal indictment was filed in the United States District Court for the District of Nevada charging Plaintiff Rivera and three co-defendants with marijuana-related offenses; that same day, the Court issued a federal arrest warrant for Plaintiff. On October 26, 2015, Plaintiff was arrested by the United States Marshal Service ("USMS") in the Eastern District of California pursuant to the federal indictment and corresponding arrest warrant. Plaintiff was brought before a magistrate judge in the Eastern District of California on October 27, 2015. The magistrate judge ordered Plaintiff detained pending transfer to the District of Nevada for his initial appearance and a detention hearing. The magistrate judge further ordered Plaintiff into the custody of the United States Marshal's Service ("USMS") and directed them to transfer Plaintiff to the District of Nevada "forthwith."

On November 4, 2015, the United States Marshals in the Eastern District of California transferred Plaintiff to the United States Marshals in the District of Nevada. On or about November 4, 2015, Deputy U.S. Marshal Joshua Wilke received an email from administrative staff from the U.S. Marshals Service for the Eastern District of California notifying him – and Defendant – that Plaintiff was transported and was now in the custody of the U.S. Marshals Service for the District of Nevada. The email contained Plaintiff's "record" and was received by Wilke. Also, on that same day, the USMS transported Plaintiff to the Nevada Southern Detention Center ("NSDC"), a private for-profit detention center operated by CoreCivic. Plaintiff was placed in administrative segregation because of his history as a gang dropout. According to protocol, Wilke should have forwarded the email and/or notified the Court Operations Supervisor so that Plaintiff could be taken/scheduled for his initial appearance in court. Wilke did not, however, notify anyone or do

anything with the email notice, failing to adhere to protocol necessary for Plaintiff to be brought to court for his initial appearance. At that time, the USMS did not have a mechanism in place to detect individuals who were not brought to court due to an omission or lapse like Wilke's failure to notify the Court Operations Supervisor.

Plaintiff remained in administrative segregation without being taken to court or seeing an attorney for the next 355 days. After almost a year without being appointed counsel or having been taken in front of a judge for his initial hearing, Plaintiff was able to send correspondence to the Federal Public Defender's Office seeking help; in response, an employee of the Federal Public Defender's Office contacted the local United States Attorney's Office and U.S. Marshals. As a result of those efforts, Plaintiff was finally brought before a United States Magistrate Judge in the District of Nevada on October 24, 2016; at his initial appearance, Plaintiff pled not guilty, was appointed counsel, and was released on a personal recognizance bond.

### B. Disputed Facts

The Parties dispute whether the USMS failure to follow its protocol led to Plaintiff being detained longer than he would have been detained had he been brought to court promptly.

### IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322(1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

V. DISCUSSION

a. Federal Tort Claims Act

The FTCA waives the United States' sovereign immunity such that the United States may be held liable for the negligence of its employees in the same manner and to the same extent as a private individual under like circumstances, according to the law of the state where the act or omission occurred. Jachetta v. United States, 653 F.3d 898, 904 (9th Cir. 2011) There must be an analogous situation in which a private person would be held liable under applicable state tort law. Id.; Delta Sav. Bank v. United States, 265 F.3d 1017, 1024–26 (9th Cir. 2001). "The breach of a duty created by federal law is not, by itself, actionable under the FTCA." Love v. United States, 60 F.3d 642, 644 (9th Cir. 1995).

b. Negligence

The Court turns to the Plaintiff's first claim. When analyzing claims under the FTCA, a court necessarily must engage in a two-step process. First, a court must determine whether a state analogue exists i.e., whether the claim could be brought against private individuals or entities in similar circumstances. If an analogue exists, a court must determine whether the case may proceed after considering the elements of the analogous state claim as applied to the particular case.

The Court finds that Nevada law permits a negligence claim against prison officials. See Butler v. Bayer, 168 P.3d 1055, 1063-66 (Nev. 2007) (analyzing claim against prison officials under state law which has same requirement for analogous claim to exist). The Nevada Supreme Court's decision in Bayer is instructive. Id. In Bayer, a former inmate brought various claims, including state common-law negligent failure to protect and negligence by abandonment, against

state prison officials for an incident in which he was severely beaten and injured while incarcerated. Id. at 1059-61. The state trial court had granted summary judgment on the state law negligence claims and the Nevada Supreme Court reversed as to one of the negligence claims. Id. at 1065-66.

Bayer is instructive because that the Nevada Supreme Court actually permitted the negligence claims to proceed against state officials. Nevada law is similar to federal law in that it only permits tort claims to proceed against state officials if such a claim could be brought against private citizens. See Nevada Revised Statute ("NRS") § 41.031. Pursuant to Section 41.31 Nevada has generally waived state sovereign immunity for torts with a few exceptions. Id.; Franchise Tax Bd. of Cal. v. Hyatt, 335 P.3d 125, 134 (Nev. 2014). State officials may be subject to tort liability "with the same rule of law as are applied to civil actions against natural persons and corporations." § 41.031. This means that the tort claims against state officials in Bayer could only have been maintained if such claims could be brought against any resident or citizen of Nevada. Thus, negligence claims may proceed against state (and federal) officials since such claims may proceed against private citizens involved in the incarceration of other citizens.

This conclusion is further buttressed by the Nevada Supreme Court's reference to the Restatement Second of Torts in defining the contours of the negligent failure to protect claim. In Bayer, there was an absence of state law as to the specific contours of the negligence claims related to incarceration. As a result, the Nevada Supreme Court looked to the Restatement of Torts for guidance on the negligent failure to protect since the Restatement had a section regarding this specific claim. Bayer, 168 P.3d at 163. The Restatement section relied upon by the Nevada Supreme Court applies not only to public officials but to private ones as well. Restatement Second of Torts, § 320.

The second important aspect of the Nevada Supreme Court's ruling in Bayer is that the Supreme Court relied upon the general elements of a negligence action in defining the negligent abandonment claim in the absence of prior state caselaw or a specific section of the Restatement. Bayer, 168 P.3d at 1065. The Nevada Supreme Court noted that the caselaw detailing of the duty of care of prison officials when releasing an inmate was "nonexistent," but the Supreme Court

nonetheless found that prison "officials have a duty to exercise ordinary care in performing their duties." Id. at 1065. This holding of the Nevada Supreme Court, including its reversal of the state trial court and remanding the negligence for trial, establishes by implication that common law negligence claims may be brought against private citizens or entities under Nevada law. This Court thus finds that negligence claims may be brought against the United States in this action based upon the purported negligence of the respective federal officials in this case. This is because an analogous state negligence claim involving private individual involved with incarceration exists.

Under Nevada law, to prevail on a negligence claim, "a plaintiff must demonstrate (1) that the defendant owed the plaintiff a duty of care, (2) that the defendant breached that duty, (3) that the breach of the duty caused harm to the plaintiff that was reasonably foreseeable, and (4) damages." Id. at 1065.

The Court finds that there are genuine issues of material fact as to Plaintiff's negligence claim. The Plaintiff has alleged that USMS was negligent in performing its duty to ensure that Plaintiff was brought to court after being transferred into the District of Nevada. It is undisputed that the USMS had the duty to ensure that Plaintiff and other individuals in USMS custody were brought to the attention of other court officials who would then initiate the process for such individuals to be brought to court for an initial appearance. It is also undisputed that the normal process to be followed to ensure that individuals were brought to court was not followed in this case. There is a dispute, however, as to whether the alleged harm in this case, a lengthy period of detention, was caused by the failure of the USMS to follow its protocol. Therefore, this case will proceed to trial.

### c. Negligent Infliction of Emotion Distress

Plaintiff has also asserted a claim for negligent infliction of emotional distress. To establish this claim, a plaintiff must demonstrate that (1) defendant owed a duty of care to plaintiff; (2) defendant breached that duty; (3) the breach was the cause of Plaintiff's injuries; and (4) Plaintiff suffered serious emotional distress. Olivero v. Lowe, 995 P.2d 1023 (Nev. 2000).

The Court finds that there are genuine issues of disputed fact as to this claim such that it will proceed to trial. As already noted, the Court finds that the Defendant owed Plaintiff a duty of

care and that Defendant violated that duty of care. However, the Court also finds that there are genuine issues of disputed fact as to any alleged injury and the causation for any alleged injury.

### d. Intentional Infliction of Emotional Distress

The Court finds that Plaintiff has not established by undisputed or disputed facts a claim for intentional infliction of emotional distress. Under Nevada law, a plaintiff alleging a claim of intentional infliction of emotional distress must establish that defendants (1) engaged in extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) that the plaintiff suffered severe or extreme emotional distress; and (3) that actual or proximate causation exists between defendant's conduct and plaintiff's injury. Star v. Rabello, 625 P.2d 90, 91-92 (Nev. 1981). Extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community. Maduike v. Agency Rent-A-Car, 953 P.2d 24, 26 (Nev. 1998).

The Court finds that there is no evidence in the record to support that any individual or official acted with the intention to causing emotional distress or was even indifferent to known distress. The Court therefore dismisses this claim.

### e. False Imprisonment

The Court finds that Plaintiff has not established by undisputed or disputed facts a claim for false imprisonment. Under Nevada law, false imprisonment occurs where a Plaintiff's "liberty is restrained under the probable imminence of force without any legal cause or justification." Jordan v. State ex rel. DMV & Pub. Safety, 110 P.3d 30, 48 (Nev. 2005) (internal citation omitted); see also Catrone v. 105 Casino Corp., 414 P.2d 106, 107 (Nev. 1966) (if arrest "has been extrajudicial, without legal process, it is false imprisonment.") In order to sustain a claim of false imprisonment, plaintiff must show (1) Defendant intended to confine the plaintiff within boundaries fixed by the Defendant, (2) the Defendant's act directly or indirectly resulted in the confinement of the plaintiff, and (3) the plaintiff was conscious of the confinement or harmed by it. Id.

Plaintiff cannot establish this claim because he was taken into custody through a legal process, i.e., there was probable cause to arrest him and transport him to Nevada. Catrone, 82 Nev.

7

166. Plaintiff was initially detained based upon a lawful order of detention. The USMS was never ordered to release him pursuant to a personal recognizance bond. He was therefore held pursuant to a lawful order. This claim therefore will also be dismissed.

### f. Malicious Prosecution

The Court also finds that Plaintiff has not established by undisputed or disputed facts a claim for malicious prosecution. Under Nevada law, a plaintiff alleging a claim of malicious prosecution must show (1) want of probable cause to initiate the prior criminal proceeding, (2) malice, (3) termination of the prior criminal proceedings; and (4) damage. LaMantia v. Redisi, 38 P.3d 877, 879 (Nev. 2002); see also Jordan v. Bailey, 944 P.2d 828, 834 (Nev. 1997). A malicious prosecution claim requires that the defendant initiated, procured the institution of, or actively participated in the continuation of a criminal proceeding against the plaintiff. Id. Malice requires that there be an evil intent, wish or design to vex, annoying or injury another person. See Ewish v. State, 871 P.2d 306, 312 (Nev. 1994). Malice may be implied if defendants acted in willful disregard of the rights of plaintiff. Id.

The Court finds that the Plaintiff has not set forth any facts that would support a malicious prosecution claim. More specifically, Plaintiff has not presented any evidence that any federal prosecutor acted with any malice or evil intent as to Plaintiff's prolonged detention. This claim will therefore be dismissed.

### VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 21) is DENIED and the Defendant's Motion to Dismiss/Summary Judgment (ECF No. 19) is DENIED in part and GRANTED in part consistent with this order.

**IT IS FURTHER ORDERED** that a video status conference is set in this case for October 26, 2021 at 11:45 AM. The instruction regarding videoconference appearance to be issued.

DATED: September 30, 2021.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**